UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

June 5, 2014

LETTER TO COUNSEL:

    RE:    *Roger L. Michel v. Commissioner, Social Security Administration*;
            Civil No. SAG-13-2311

Dear Counsel:

    On August 8, 2013, the Plaintiff, Roger L. Michel, petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, vacate the opinion of the Administrative Law Judge, and remand the case for further consideration. This letter explains my rationale.

    Mr. Michel filed his claim for DIB on August 20, 2010, alleging a disability onset of May 22, 2010. (Tr. 188–91). His claim was denied initially and on reconsideration. (Tr. 112–15, 117–18). A hearing was held on February 21, 2012. (Tr. 59–82). Following the hearing, on March 29, 2012, the ALJ determined that Mr. Michel was not disabled during the relevant time frame. (Tr. 17–25). The Appeals Council denied Mr. Michel's request for review (Tr. 6–11), so the ALJ's decision constitutes the final, reviewable decision of the agency.[1]

    The ALJ found that Mr. Michel suffered from the severe impairment of degenerative disc disease. (Tr. 19). Despite this impairment, the ALJ determined that Mr. Michel retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except with the following limitations: stand or sit 30-45 minutes, but can sit/stand on an alternate basis for eight hours a day, five days per week; avoid heights, hazardous machinery, temperature or humidity extremes, and climbing stairs, ropes, or ladders;

---

[1] Mr. Michel previously filed a claim for DIB on November 12, 2008, alleging a disability onset of August 14, 2007. *See* (Tr. 32). A hearing in connection with that claim was held on March 30, 2010. (Tr. 32–58). On May 21, 2010, the ALJ determined that Mr. Michel was not disabled, *see* (Tr. 86–97), and the Appeals Council denied Mr. Michel's request for review. (Tr. 104–09). The present appeal derives from Mr. Michel's second application for DIB.

*Roger L. Michel v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2311
June 5, 2014
Page 2

> infrequent climbing, balancing, and stooping; jobs that have only occasional fine dexterity and manipulation; limited to simple, routine, unskilled jobs, SVP 1 or 2 in nature; jobs that are low stress, low concentration, low memory meaning one or two step tasks; jobs that are non-production pace work; and, jobs that have little or no decision making, changes in the work setting, or judgment.

(Tr. 20). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Michel could perform jobs existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 24–25).

Mr. Michel raises four arguments on appeal. First, Mr. Michel argues that the ALJ failed to meet his evidentiary burden at step five of the sequential evaluation. Second, Mr. Michel disagrees with the ALJ's assignment of no weight to the opinions of two treating sources. Third, Mr. Michel argues that the RFC assessment lacked a function-by-function analysis. Finally, Mr. Michel asserts that the ALJ made an erroneous adverse credibility determination, which failed to consider his veteran status and his 25-year work history. I find that the ALJ failed to fulfill his duty of explanation regarding the assignment of weight to the opinions of Mr. Michel's treating physicians. I also find that a conflict exists between the VE testimony regarding the jobs that Mr. Michel can perform, given his RFC assessment, and the DOT. However, I do not find any merit in Mr. Michel's remaining arguments. I begin my discussion with Mr. Michel's unsuccessful arguments.

Mr. Michel argues that the ALJ failed to perform a function-by-function assessment of his limitations, and that the sitting and standing restrictions in the RFC assessment lacked detail and were inconsistent with light work. Pl.'s Mot. 8–9. I disagree. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence..." SSR 96-8p, 1996 WL 374184, at *7. "SSR 96-8p only requires *consideration* of all [seven functional] factors [relating to sitting, standing, walking, lifting, carrying, pushing, and pulling], not *enumeration* of all seven strength demands." *Wilkerson v. Colvin*, TMD-13-1723, 2014 WL 1954917, at *8 (D. Md. May 14, 2014) (emphasis in original) (internal quotations omitted). Here, the ALJ provided a narrative discussion of the medical and non-medical evidence. *See* (Tr. 21–23). The ALJ specifically discussed Mr. Michel's reported activities of daily living and the medical evidence of record, which together demonstrated that Mr. Michel's degenerative disc disease did not result in significant functional limitations. *Id.* The ALJ ultimately restricted Mr. Michel to less than a full range of light work, finding, in part, that he can only stand or sit 30-45 minutes and sit/stand on an alternate basis for eight hours a day. (Tr. 20). Despite Mr. Michel's contention, these restrictions are not inconsistent with light work, and reliance on the sedentary grid rule was not appropriate. Pl.'s Mot. 9. Sedentary work is defined as lifting no more than 10 pounds at a time, and walking and standing only occasionally. *See* 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251, at *1. Light work is defined as lifting no more than 20 pounds, with frequent lifting of objects weighing 10 pounds, and a good deal of walking and standing. *See* 20 C.F.R. § 404.1567(b). While the ALJ did not specify in the RFC assessment how much weight Mr. Michel could carry, it is evident that the ALJ found that Mr. Michel was capable of performing light work with

certain exceptions. *See* (Tr. 22) (discussing medical records, which noted normal sensation, strength, coordination, and gait); *see also* (Tr. 70) (Mr. Michel stating that he "could probably lift maybe 20 pounds"). Where one or more of the criteria of a rule are not met, the grid rules do not direct a finding of disability or non-disability, but are used as guidance for decision making. *See* SSR 83-10, at *1. The ALJ properly used the grid rules as a framework for his decision. *See* (Tr. 24). Therefore, I do not find remand on this point necessary.

Mr. Michel also takes issue with the ALJ's adverse credibility finding. He contends that the ALJ "cherry picked" evidence to support the credibility determination, and that the ALJ failed to consider his "strong work history of 25 years with the same employer prior to the alleged disability onset date." Pl.'s Mot. 9–10. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595. The ALJ will also consider other evidence of a claimant's symptoms in the credibility evaluation, including the claimant's prior work record and the claimant's own statements of his symptoms. *See* 20 C.F.R. § 404.1529(c)(3).[2]

Here, the ALJ concluded that Mr. Michel's impairment could produce the alleged symptoms; however, the ALJ concluded that "the objective findings...failed[ed] to provide strong support for [Mr. Michel's] allegations of disabling symptoms and limitations." (Tr. 21). The ALJ first noted that Mr. Michel's daily activities, which included meal preparation, limited housework, and personal care needs, did not establish disabling limitations. *Id.* The ALJ also cited to medical evidence demonstrating that Mr. Michel maintained good muscle strength, normal gait, and stable pain. (Tr. 22). The ALJ noted that Mr. Michel's pain was significantly reduced and well-controlled with medication. *See* (Tr. 22) *citing* (Tr. 357, 360, 364, 367, 370, 373, 376, 379, 382, 385, 388, 391, 394, 397) (all noting pain level between 3-6 without medication, and 0-1 with medication). I find that this discussion provides substantial evidence supporting the ALJ's adverse credibility determination. I further find no error on the part of the ALJ for failing to explicitly mention Mr. Michel's work history in the credibility determination. A claimant's work record is just one factor that an ALJ will consider in the credibility evaluation. *See* 20 C.F.R. § 404.1529(c)(3). It is clear that the ALJ was aware of Mr. Michel's past work as a ramp supervisor, as the ALJ inquired into Mr. Michel's work history at the hearing and specifically mentioned his past relevant work in the written opinion. *See* (Tr. 23, 76–77). The ALJ's failure to expressly discuss Mr. Michel's work history in the credibility evaluation does not merit remand. *See Brown v. Astrue*, BPG-09-2327, 2011 WL 1431529, at *7 (D. Md. Apr. 14, 2011) (rejecting claimant's argument that the ALJ was required to mention her good record in the credibility evaluation, because the ALJ addressed each of the other factors set

---

[2] The ALJ will consider information provided by the claimant, treating and non-treating sources, and others, regarding the claimant's pain or other symptoms. The information may include: (1) what precipitates or aggravates symptoms; (2) what medications or treatments are used to alleviate symptoms; and (3) how the symptoms affect the claimant's daily activities. *See* 20 C.F.R. § 404.1529(c)(3).

forth in 20 C.F.R. § 404.1529(c)(3)).

Finally, as part of Mr. Michel's step five argument, he unsuccessfully argues that two of the jobs identified by the VE—order caller and control worker, are Reasoning Level 2 jobs, which exceed his mental capabilities as set forth in the RFC assessment. Mr. Michel contends that the ALJ restricted him to simple, routine, 1-2 step tasks, which is more consistent with Reasoning Level 1 jobs. However, courts in this district have found that reasoning levels of two and three are consistent with limitations to simple instructions. *See Blum v. Comm'r Soc. Sec. Admin.*, SAG-12-1833, 2013 WL 2902682, at *3 (D. Md. June 11, 2013); *Clarkson v. Comm'r Soc. Sec. Admin.*, SAG-11-631, 2013 WL 308954, at *2 (D. Md. Jan. 24, 2013). Moreover, the ALJ's RFC assessment limited Mr. Michel to "jobs, SVP 1 or 2 in nature," and all of the jobs identified by the VE fall into the categories of either SVP 1 or 2. Accordingly, Mr. Michel's argument fails.

Turning to Mr. Michel's successful arguments, he contends that the ALJ improperly rejected the opinions of his treating physicians and relied too heavily on the opinions of non-examining state agency sources. Pl.'s Mot. 5–8. The ALJ must generally give more weight to a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig,* 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as: (1) the examining relationship; (2) the treatment relationship; (3) the degree to which the opinion is supported by the record as a whole; (4) the opinion's consistency with the record as a whole; (5) whether the physician is a specialist; and (6) any other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). The ALJ similarly applies these factors to the findings of state agency medical consultants. *See* 20 C.F.R. § 404.1527(e)(2)(ii).

I find that the ALJ has failed to fulfill his "duty of explanation" regarding the weight assigned to the opinions of Mr. Michel's treating physicians. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Pursuant to Social Security regulations, the ALJ is required to "give good reasons" for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Here, the ALJ assigned "no weight" to the opinions of Dr. Alexander Vaccaro and Dr. Selina Xing, reasoning that their opinions were not supported by the medical evidence of record. *See* (Tr. 23). The ALJ scarcely provided any further analysis, except to state that Dr. Vaccaro's opinion lacked "specific objective findings." *Id.* The ALJ also did not explain how the opinions were inconsistent with other medical evidence. Notably, of the nearly 215 pages of medical records, Dr. Xing's progress notes comprise more than 170 pages.[3] Thus, it is unclear what contrary evidence the ALJ intended to rely upon. (Tr. 23). I cannot discern, from the ALJ's abbreviated discussion of the opinion evidence, whether his assignment of weight to the treating physicians' opinions is supported by substantial evidence. Thus, remand is warranted. However, I express no opinion as to whether the ALJ's assignment of weight is correct or incorrect. I do not find it necessary to address the sufficiency of the ALJ's assignment of weight

---

[3] *See* Exs. 1F–11F. (Tr. 252–466).

to the opinions of the state agency medical consultants, although I note that the ALJ used similarly conclusory language in evaluating their opinions.

Mr. Michel also argues that the ALJ failed to prove, at step five of the sequential evaluation, that he is capable of performing work that exists in significant numbers in the national economy. Pl.'s Mot. 3–5. Mr. Michel argues that the jobs identified by the VE conflict with the ALJ's RFC assessment. *Id.* at 4. At step five, the Commissioner bears the burden of proving that the claimant is capable of performing other work in the national economy. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The VE testified that, in light of the RFC assessment, Mr. Michel is capable of performing the jobs of hand bander, order caller, and control worker. (Tr. 79). According to the Dictionary of Occupational Titles ("DOT"), these jobs require "frequent" manipulative activities such as fingering and handling, yet the RFC assessment restricts Mr. Michel to only "occasional fine dexterity and manipulation."[4] SSR 00-04p provides that the occupational evidence provided by the VE should be consistent with the occupational information supplied by the DOT. SSR 00-04P, 2000 WL 1898704, at *2. If a conflict between the VE testimony and the DOT is apparent, the ALJ "must elicit a reasonable explanation for the conflict..." *Id.* It is the duty of the ALJ to "inquire, on the record, as to whether or not there is such consistency." *Id.* Here, the ALJ specifically asked the VE whether her testimony was consistent with the DOT. *See* (Tr. 79). The VE testified that the only conflict was that the DOT did not address any sit/stand options. *Id.* Mr. Michel's attorney did not raise any inconsistencies between the VE's testimony and the DOT. *See* (Tr. 80–82).

Courts in this circuit have declined to hold that SSR 00-04p affirmatively requires an ALJ to uncover conflicts between VE testimony and the DOT. *See Justin v. Massanari*, 20 F. App'x 158, at *2 (4th Cir. 2001) (citing SSR 00-04p for the proposition that an ALJ is required to address "evident discrepancies" and is not required to uncover discrepancies); *Acevedo ex rel v. Colvin*, 0:12-2137-TMC, 2014 WL 197738, at *4–5 (D.S.C. Jan. 16, 2014) (stating that the ALJ's inquiry into the consistency of the VE's testimony and the DOT was sufficient, and that the ALJ "was not obligated to further independently investigate"); *Stuckey v. Colvin*, 2:12-cv-386, 2013 WL 6185837, at *3 (E.D. Va. Nov. 25, 2013) (rejecting claimant's argument that VE's omission of a DOT code number presented an apparent unresolved conflict, where ALJ made the proper inquiry regarding whether a conflict existed, and specified the DOT code number in the opinion); *Boggs v. Astrue*, 2:12-cv-25, 2012 WL 5494566 (N.D.W. Va. Nov. 13, 2012) ("There is no affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses and because the plaintiff did not bring the vocational expert's mistake to the ALJ's attention, the ALJ did not need to explain how the conflict was resolved."); *Roberts v. Astrue*, 1:11-cv-00236, 2013 WL 663306, at *9 (W.D.N.C. Feb. 22, 2013) (stating that SSR 00-04p requires the ALJ to inquire as to any possible conflict between the VE evidence and the DOT, but failure to do so is not automatically a reason for remand).

---

[4] The agency defines "frequent" as 1/3 to 2/3 of the time, and "occasional" as "very little up to 1/3 of the time." *See* SSR 83-10, 1983 WL 31251, at *5–6; *see also* Hand Bander, 920.687-026, 1991 WL 687967; Order Caller, 209.667-014, 1991 WL 671807; Control Worker, 649.687-010, 1991 WL 685669.

*Roger L. Michel v. Commissioner, Social Security Administration*;
Civil No. SAG-13-2311
June 5, 2014
Page 6

Thus, the ALJ's inquiry into whether a conflict existed fulfilled his obligation pursuant to SSR 00-04p, and the ALJ was not required to further investigate whether any conflicts existed. However, given that I have already deemed remand appropriate, and given that the ALJ is now on notice of the inconsistency between the jobs identified by the VE and the DOT, the ALJ has an obligation to resolve this conflict at the hearing on remand.

For the reasons set forth herein, both parties' motions for summary judgment (ECF Nos. 14, 16) will be DENIED. The opinion of the Administrative Law Judge is VACATED and the case is REMANDED to the Commissioner for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge